James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs and the proposed Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVETTE DELERME and THOMAS MACNISH, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>     Defendant. | Civil Action No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Ivette Delerme and Thomas MacNish ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this class action against T-Mobile USA, Inc. ("T-Mobile" or the "Defendant"). Plaintiffs make the following allegations, except as to allegations specifically pertaining to Plaintiffs, upon information and belief based upon, *inter alia*, the investigation of counsel, and review of public documents.

## NATURE OF THE ACTION

1.    This is a class action on behalf of the over 53 million individuals whose sensitive personal identifying information was compromised in a cybersecurity breach of T-Mobile, which was announced on or about August 16, 2021 (the "T-Mobile Breach").

2.    According to T-Mobile's public announcement of the T-Mobile Breach, the compromised information includes names, birth dates, Social Security numbers, driver's license numbers, phone numbers, and two types of identification numbers associated with mobile phones–IMEI and IMSI numbers.

3.    T-Mobile failed to adequately protect consumers' sensitive personal identifying information. Lack of proper safeguards provided a means for unauthorized intruders to breach T-Mobile's computer network and steal sensitive personal identifying information.

4.    Armed with this sensitive personal identifying information, hackers can commit a variety of crimes including, among other things, taking out loans in another person's name; opening new financial accounts in another person's name; using the victim's information to obtain government benefits; filing a fraudulent tax return and using the victim's information to obtain a tax refund; obtaining a driver's license or identification card in the victim's name but with another person's picture; or giving false information to police during an arrest.

5.     As a result of the T-Mobile Breach, Plaintiffs and Class members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class members must now and in the future closely monitor their financial accounts to guard against identity theft. Plaintiffs and Class members may be faced with fraudulently incurred debt. Plaintiffs and Class members may also incur out of pocket costs for, among other things, obtaining credit reports, credit freezes, or other protective measures to deter or detect identity theft.

6.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly-situated individuals and entities whose sensitive personal identifying information was accessed during the T-Mobile Breach.

7.     Plaintiffs seek remedies including but not limited to reimbursement of out-of-pocket losses, further credit monitoring services with accompanying identity theft insurance, and improved data security.

## PARTIES

8.     Plaintiff Ivette Delerme is a citizen of Florida who resides in Boynton Beach, Florida.

9.     Ms. Delerme is a current T-Mobile customer. On or about August 20, 2021, Ms. Delerme received a text message from T-Mobile notifying her that her personal information had been compromised.

10.    Since then, Ms. Delerme has spent substantial time addressing the resulting privacy concerns, including researching the nature of the breach, and reviewing her financial and credit account statements for evidence of unauthorized activity, which she will continue to do for years into the future.

11.    Plaintiff Thomas MacNish is a citizen of Florida who resides in Pompano Beach, Florida.

12.    Mr. MacNish is a current T-Mobile customer. On or about August 20, 2021, Mr. MacNish received a text message from T-Mobile notifying him that his personal information had been compromised.

13.    Since then, Mr. MacNish has spent substantial time addressing the resulting privacy concerns, including researching the nature of the breach, and reviewing his financial and credit account statements for evidence of unauthorized activity, which he will continue to do for years into the future.

14.    Defendant T-Mobile USA, Inc. is incorporated in the state of Delaware with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. Defendant is a national telecommunications company that provides mobile communication services, among other products and services, throughout the United States and around the globe.

4

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). If a class is certified in this action, the amount in controversy will exceed $5,000,000.00, exclusive of interest and costs. There are more than 100 members in the proposed class, and at least one member of the proposed class is a citizen of a state different from T-Mobile.

16.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

17.     This Court has personal jurisdiction over T-Mobile because it conducts business in the State of New Jersey, purposefully directs or directed its actions toward New Jersey, and/or has the requisite minimum contacts with New Jersey necessary to permit the Court to exercise jurisdiction. This Court also has personal jurisdiction over T-Mobile because T-Mobile's conduct caused harm to thousands of Class members residing in New Jersey.

18.     Venue is also proper within this District because, pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District. T-Mobile's conduct caused harm to thousands of Class members residing in New Jersey.

## SUBSTANTIVE ALLEGATIONS

## THE T-MOBILE BREACH

19.    On August 15, 2021, news media reported that hackers claimed to have stolen personal information for over 100 million individuals from T-Mobile. According to the hackers, the personal identifying information included customers' names, addresses, social security numbers, drivers' license information, phone numbers, dates of birth, security PINs, phone numbers, and, for some customers, unique IMSI and IMEI numbers (embedded in customer mobile devices that identify the device and the SIM card that ties that customer's device to a telephone number). The hackers claimed to have doled the information into batches, some of which had already been sold and others that were, at the time, being marketed for sale.[1]

20.    Reports indicate that a portion of the stolen T-Mobile customer data, including 30 million Social Security and driver's license numbers, was being marketed on the dark web for approximately $270,000.[2]

---

[1] *See, e.g.*, Lisa Vass, *100m T-Mobile Customer Records Purportedly Up for Sale*, Threatpost (Aug. 16, 2021 11:12 am), https://threatpost.com/t-mobile-investigates-100m-records/168689/; Joseph Cox, *T-Mobile Investigating Claims of Massive Customer Data Breach*, VICE (Aug. 15, 2021 11:03 am), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million.

[2] *See* Joseph Cox, *supra* note 1.

21.    On August 16, 2021, T-Mobile released a statement confirming that "unauthorized access to some T-Mobile data had occurred," and that T-Mobile was continuing to investigate the data breach.[3]

22.    On August 17, 2021, T-Mobile confirmed that the stolen data included "some personal information."[4]

23.    On August 19, 2021, T-Mobile posted a "Notice of Data Breach" to its website, explaining that: "T-Mobile learned that a bad actor illegally accessed personal data. Our investigation is ongoing, but we have verified that a subset of T-Mobile data had been accessed by unauthorized individuals and the data stolen from our systems did include some personal information."[5]

24.    On August 20, 2021, T-Mobile posted a statement to its website confirming that:

    a.    "[A]pproximately 7.8 million current T-Mobile postpaid customer accounts that included first and last names, date of birth, [Social Security numbers], and driver's license/ID information was

---

[3]  *T-Mobile Cybersecurity Incident Update*, T-Mobile (Aug. 16, 2021), https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021.

[4]  *T-Mobile Shares Additional Information Regarding Ongoing Investigation into Cyberattack*, T-Mobile (Aug. 17, 2021, Updated Aug. 20, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation.

[5]  *Notice of Data Breach: Keeping you safe from cybersecurity threats*, T-Mobile (Aug. 19, 2021), https://www.t-mobile.com/brand/data-breach-2021.

compromised[,]" in addition to phone numbers, IMEI, and IMSI information;

b. "5.3 million current postpaid customer accounts that had one or more customer names, addresses, dates of birth, phone numbers, IMEIs, and IMSIs illegally accessed";

c. "[D]ata files with information from about 40 million former or prospective T-Mobile customers, including first and last names, date of birth, [Social Security numbers], and driver's license/ID information were compromised";

d. "667,000 accounts of former T-Mobile customers . . . were accessed with customer names, phone numbers, addresses and dates of birth compromised";

e. "[A]pproximately 850,000 active T-Mobile prepaid customer names, phone numbers and account PINs were exposed."[6]

25.     On information and belief, T-Mobile delayed directly notifying customers until on or after August 19, 2021.

26.     Further, the T-Mobile Breach was not the first time Defendant was the subject of a cybersecurity breach. T-Mobile has been the target of many data

---

[6] *T-Mobile Shares Updated Information Regarding Ongoing Investigation into Cyberattack*, *supra* note 4.

breaches in the past, including at least four within the past three years.[7] As such, it knew that its systems were vulnerable and likely to be targeted by hackers seeking to obtain personal identifying information. Despite this knowledge, T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect its customers' personal information.

27.     In November 2019, hackers accessed personal identifying information for approximately one million T-Mobile prepaid customers, including names, phone numbers, account information, rates, and plan features.[8]

28.     In March 2020, T-Mobile disclosed that it had experienced a data breach exposing customer and employee personal identifying information, including names, addresses, social security numbers, financial account information, government identification numbers, phone numbers and billing account information.[9]

---

[7] Chris Velazco, *Here's what to do if you think you're affected by T-Mobile's big data breach*, Washington Post (Aug. 20, 2021 2:45 pm) https://www.washingtonpost.com/technology/2021/08/19/t-mobile-data-breach-what-to-do/.

[8] Devin Coldeway, *More than 1 million T-Mobile customers exposed by breach*, TechCrunch (Nov. 22, 2019 7:25 pm), https://techcrunch.com/2019/11/22/more-than-1-million-t-mobile-customers-exposed-by-breach/#:~:text=More%20than%201%20million%20T-Mobile%20customers%20exposed%20by,password%20data%29%20was%20exposed%20to%20a%20malicious%20actor.

[9] *T-Mobile Breach Leads to the Exposure of Employee Email Accounts and User Data*, Identity Theft Resource Center (Mar. 5, 2020), https://www.idtheftcenter.org/t-mobile-breach-leads-to-the-exposure-of-employee-email-accounts-and-user-data/#:~:text=On%20Thursday%2C%20March%204%2C%202020%2C%20T-Mobile%20disclosed%20a,separate%20data%20breach%20notification%20letters%20on%20their%20website.

29.    In December 2020, T-Mobile discovered another data breach in which hackers accessed customer proprietary network information and undisclosed call-related information for hundreds of thousands of customers.[10]

30.    In February 2021, T-Mobile notified customers that cyberthieves gained access to customer account information, including full names, addresses, email addresses, account numbers, Social Security numbers, account PINs, account security questions and answers, dates of birth, and plan information.[11]

31.    Additionally, in 2017, a security researcher identified a vulnerability on a T-Mobile website that allowed hackers to access personal identifying information including email addresses, account numbers, and IMSI numbers.[12] That researcher explained

> T-Mobile has 76 million customers, and an attacker could
> have ran a script to scrape the data (email, name, billing
> account number, IMSI number, other numbers under the
> same account which are usually family members) from all
> 76 million of these customers to create a searchable

---

[10] Alicia Hope, *Second Data Breach in 2020 for T-Mobile Exposed Customer and Call-Related Information of 200,000 Subscribers*, CPO Magazine (Jan. 11, 2021), https://www.cpomagazine.com/cyber-security/second-data-breach-in-2020-for-t-mobile-exposed-customer-and-call-related-information-of-200000-subscribers/#:~:text=T-Mobile%20 suffered%20a%20data%20breach%20in%20which%20hackers,the%20fourth%20to%20hit%20t he%20company%20since%202018.

[11] Sergiu Gatlan, *T-Mobile discloses data breach after SIM swapping attacks*, Bleeping Computer (Feb. 26, 2021 3:18 pm), https://www.bleepingcomputer.com/news/security/t-mobile-discloses-data-breach-after-sim-swapping-attacks/.

[12] Lorenzo Franceschi-Bicchierai, *T-Mobile Website Allowed Hackers to Access Your Account Data With Just Your Phone Number*, Motherboard Tech (Oct. 10, 2017 2:03 pm), https://www.vice.com/en/article/wjx3e4/t-mobile-website-allowed-hackers-to-access-your-account-data-with-just-your-phone-number.

database with accurate and up-to-date information of all users.[13]

According to a hacker, the bug had been exploited by multiple hackers over a multi-week period before it was discovered by the researcher, even uploading a video to YouTube demonstrating how to exploit the vulnerability.[14]

32.     Despite these prior breaches, T-Mobile failed to adopt adequate protective measures to ensure that consumers' sensitive personal identifying information would not be improperly accessed.

33.     Once T-Mobile's systems had been compromised, T-Mobile failed to timely discover the breach and implement adequate remedial measures to secure consumers' sensitive personal identifying information.

34.     Moreover, T-Mobile failed to timely inform consumers of the T-Mobile Breach.

35.     As a result of T-Mobile's inadequate measures, sensitive personal identifying information relating to over 53 million individuals was obtained from T-Mobile's computer network.

36.     As a result of Defendant's failure to keep their personal identifying information from unauthorized access, Plaintiffs and Class members are in

---

[13] *Id.*

[14] *Id.*

imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

37.     Plaintiffs and Class members face a present and substantial risk of out-of-pocket fraud losses such as loans opened in their names, government benefits fraud, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

38.     IMEI and IMSI numbers are identification numbers associated with a specific customer's phone. Because these numbers were included in the T-Mobile Breach, Plaintiffs and Class members are at risk for "SIM-swap attack[s]" which "could lead to account takeover concerns . . . since threat actors could gain access to two-factor authentication or one-time passwords tied to other accounts—such as email, banking, or any other account employing advanced authentication security feature—using a victim's phone number."[15]

39.     Additionally, Plaintiffs and Class members face a present and substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their personal identifying information.

---

[15] Brian Barrett, *The T-Mobil Data Breach Is One You Can't Ignore*, Wired (Aug. 16, 2021 4:44 pm), https://www.wired.com/story/t-mobile-hack-data-phishing/.

## T-MOBILE'S POST-BREACH ACTIONS ARE INADEQUATE

40.    In the wake of the T-Mobile Breach, Defendant has offered only inadequate services. T-Mobile is offering identify theft protection, Scam Shield (which includes call blocking and caller ID features), and "Account Takeover Protection" services, Defendant places the burden on Plaintiffs and Class members by requiring them to expend the time to enroll in these services, instead of automatically enrolling all those impacted by the T-Mobile Breach.

41.    Moreover, T-Mobile is only offering identity monitoring services for two years, even though the ramifications of personal identifying theft can extend far beyond two years.

42.    T-Mobile has taken minimal steps to notify customers of the breach. Besides a terse text message sent to certain customers, T-Mobile has only posted statements to its website.

43.    The Federal Communications Commission has opened an investigation into the T-Mobile Breach.[16]

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class and sub-class:

---

[16] Akanksha Rana, *T-Mobile breach hits 53 million customers as probe finds wider impact*, Reuters (Aug. 20, 2021 3:46 pm), https://www.reuters.com/technology/t-mobile-says-hackers-accessed-data-another-53-mln-subscribers-2021-08-20/.

> All individuals and entities in the United States whose personal identifying information was accessed in the cybersecurity breach announced by T-Mobile on August 16, 2021 (the "Nationwide Class"); and

> All individuals and entities in Florida whose personal identifying information was accessed in the cybersecurity breach announced by T-Mobile on August 16, 2021 (the "Florida Sub-Class").

45.     Excluded from the Nationwide Class and Florida Sub-Class are T-Mobile; any parent, subsidiary, or affiliate of T-Mobile or any employees, officers, or directors of T-Mobile; legal representatives, successors, or assigns of T-Mobile; and any justice, judge, or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

46.     Upon information and belief, the Nationwide Class and Florida Sub-Class consist of millions of geographically dispersed members, the joinder of whom in one action is impracticable. Disposition of the claims in a class action will provide substantial benefits to both the parties and the Court.

47.     The rights of each member of the Nationwide Class and Florida Sub-Class were violated in a similar fashion based upon T-Mobile's uniform wrongful actions and/or inaction.

48.     The following questions of law and fact are common to each Class member and predominate over questions that may affect individual Class members:

14

a.  whether T-Mobile engaged in the wrongful conduct alleged herein;

b.  whether T-Mobile was negligent in collecting, storing, and/or safeguarding the sensitive personal identifying information of the Class members;

c.  whether T-Mobile owed a duty to s and Class members to adequately protect their personal information;

d.  whether T-Mobile breached its duties to protect the personal information of Plaintiffs and Class members;

e.  whether T-Mobile knew or should have known that its data security systems and processes were vulnerable to attack;

f.  whether T-Mobile's conduct proximately caused damages to Plaintiffs and Class members;

g.  whether Plaintiffs and Class members are entitled to equitable relief including injunctive relief; and

h.  whether the Class members are entitled to compensation, monetary damages, and/or any other services or corrective measures from T-Mobile, and, if so, the nature and amount of any such relief.

49.  Plaintiffs' claims are typical of the claims of the Nationwide Class and Florida Sub-Class in that Plaintiffs, like all Class members, had their sensitive personal identifying information compromised in the T-Mobile Breach.

50.     Plaintiffs are committed to the vigorous prosecution of this action and will fairly and adequately represent and protect the interests of the proposed the Nationwide Class and Florida Sub-Class. Plaintiffs have no interests that are antagonistic to and/or that conflict with the interests of other Class members.

51.     Plaintiffs have retained counsel competent and experienced in the prosecution of complex class action litigation.

52.     The members of the proposed the Nationwide Class and Florida Sub-Class are readily ascertainable.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of the claims of the Nationwide Class and Florida Sub-Class. Plaintiffs and the Class members have suffered (and continue to suffer) irreparable harm as a result of T-Mobile's conduct. The damages suffered by some of the Class members may be relatively small, preventing those Class members from seeking redress on an individual basis for the wrongs alleged herein. Absent a class action, many Class members who suffered damages as a result of the cybersecurity breach of T-Mobile will not be adequately compensated.

54.     Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for T-Mobile. Additionally, adjudications with respect to individual Class members, such as adjudication as to injunctive relief, as a practical

matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT ONE

**NEGLIGENCE**
**(On behalf of the Nationwide Class and the Florida Sub-Class, in the Alternative)**

55.     Plaintiffs reallege and incorporate all allegations set forth in previous paragraphs as if fully set forth herein.

56.     Upon coming into possession of the private, sensitive personal information of Plaintiffs and the Class members, T-Mobile had (and continues to have) a duty to exercise reasonable care in safeguarding and protecting the information from being compromised and/or stolen. T-Mobile's duty arises from the common law, in part because it was reasonably foreseeable to T-Mobile that a breach of security was likely to occur under the circumstances and would cause damages to the Nationwide Class as alleged herein.

57.     T-Mobile also had a duty to timely disclose to Plaintiffs and Class members that the T-Mobile Breach had occurred and that the sensitive personal identifying information of the Class members—particularly Social Security numbers, dates of birth, addresses, driver's license numbers—had been, or was reasonably believed to be, compromised. Such duty also arises under the common

law because it was reasonably foreseeable to T-Mobile that a breach of security was likely to occur under the circumstances and would cause damages to the Nationwide Class as alleged herein.

58.　T-Mobile, by and through its above negligent acts and/or omissions, further breached its duties to the Class members by failing to timely disclose to Plaintiffs and Class members that the T-Mobile Breach had occurred and that the sensitive personal identifying information of Plaintiffs and the Class members had been compromised.

59.　T-Mobile also had a duty to put into place internal policies and procedures designed to detect and prevent the unauthorized dissemination of the Plaintiffs and Class members' sensitive personal identifying information. Such duty also arises under the common law because it was reasonably foreseeable to T-Mobile that a breach of security was likely to occur under the circumstances and would cause damages to the Nationwide Class as alleged herein.

60.　T-Mobile, by and through its above negligent acts and/or omissions, unlawfully breach its duties to the Class members by, inter alia, failing to exercise reasonable care in protecting and safeguarding the Class members' sensitive personal identifying information within its possession, custody, and control.

61.　But for T-Mobile's negligent and wrongful breach of the duties it owed (and continues to owe) to Plaintiffs and the Class members, the cybersecurity breach

would not have occurred, and Plaintiffs' and Class members' sensitive personal identifying information would never have been compromised.

62.     The T-Mobile Breach and the above-described substantial injuries suffered by Plaintiffs and the Class members as a direct and proximate result of the breach were reasonably foreseeable consequences of T-Mobile's negligence.

## COUNT TWO

**NEGLIGENCE PER SE**
**(On behalf of the Nationwide Class and the Florida Sub-Class, in the Alternative)**

63.     Plaintiffs reallege and incorporate all allegations set forth in previous paragraphs as if fully set forth herein.

64.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice of failing to use reasonable measures to protect sensitive personal identifying information.

65.     In 2007, the FTC published guidelines which establish reasonable data security practices for businesses. The guidelines note businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for

installing vender-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

66.     The FTC also has published a document entitled "Security Check: Reducing Risks to your Computer System" which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[17]

67.     Further, the FTC has issued orders against businesses that failed to employ reasonable measures to secure customer data. These orders provide further guidance to businesses with regard to their data security obligations.

68.     By failing to have reasonable data security measures in place, T-Mobile engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

69.     T-Mobile's violation of Section 5 of the FTC Act constitutes negligence *per se.*

---

[17] *Security Check: Reducing Risks to Your Computer System*, FTC, https://www.ftc.gov/tips-advice/business-center/guidance/security-check-reducing-risks-your-computer-systems (last visited Aug. 25, 2021).

70.    Likewise, T-Mobile's violation of New Jersey's Consumer Security Breach Disclosure Act, N.J. Stat. Ann. §§ 56:8-163, *et seq.* constitutes an independent basis of negligence *per se*.

71.    The T-Mobile Breach and the above-described substantial injuries suffered by Plaintiffs and the Class members as a direct and proximate result of the breach were reasonably foreseeable consequences of T-Mobile's negligence *per se*.

## COUNT THREE

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
### Fla. Stat. §§ 501.201, *et seq.*
### (On behalf of the Florida Sub-Class)

72.    Plaintiffs reallege and incorporate all allegations set forth in previous paragraphs as if fully set forth herein.

73.    Plaintiffs and Florida Sub-Class members are "consumers" as defined by Fla. Stat. § 501.203.

74.    Defendant advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

75.    Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Florida Sub-Class members'

personal identifying information, which was a direct and proximate cause of the T-Mobile Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the T-Mobile Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Sub-Class members' personal identifying information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the T-Mobile Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Florida Sub-Class members' personal identifying information, including by implementing and maintaining reasonable security measures and ensuring its vendors and business associates maintained reasonable security measures;

e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Sub-Class members' personal identifying information, including duties

imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2);

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Florida Sub-Class members' personal identifying information or ensure its vendors and business associates reasonably or adequately secured such information; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Florida Sub-Class members' personal identifying information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class and Florida Sub-Class, respectfully request that the Court certify this action as a class action, with Plaintiffs as class representative and the undersigned counsel as class counsel, and enter an order of judgment against T-Mobile in favor of the Class that, *inter alia*:

A.      awards actual damages to fully compensate the Nationwide Class and Florida Sub-Class for losses sustained as a direct, proximate, and/or producing cause of T-Mobile's unlawful conduct;

B.      awards pre-judgment and post-judgment interest at the maximum allowable rates;

C.      awards appropriate injunctive and equitable relief;

D.      awards reasonable attorneys' fees and costs; and

E.      orders any further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury to the extent permitted by law.

DATED: August 31, 2021          Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
jcecchi@carellabyrne.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
(917) 438-9102
lnussbaum@nussbaumpc.com

Michael E. Criden
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
(305) 357-9000
mcriden@cridenlove.com

Adam Frankel
**GREENWICH LEGAL ASSOCIATES, LLC**
881 Lake Avenue
Greenwich, CT 06831
(203) 622-6001
adam@grwlegal.com

*Attorneys for Plaintiffs and
the proposed classes*